GEORGE C. JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4864. Promulgated March 10, 1927.

Losses resulting from worthlessness of corporate stock allowed.

*Wilbur D. Shaw, Esq.*, for the petitioner.
*John W. Fisher, Esq.*, for the respondent.

TRUSSELL: This proceeding was brought for the redetermination of a deficiency for the year 1923 in the amount of $511.26. The petitioner in his return for that year claimed a deduction from gross income of $20,000, the cost of corporate stocks which had become worthless.

### FINDINGS OF FACT.

In the year 1900, A. N. Drake, R. B. Ballard, and this petitioner organized a Minnesota corporation with common capital stock of $25,000, and began a business at Minneapolis of making and dealing in farm mortgage loans, chiefly in the States of North Dakota, South Dakota, Montana, Idaho, and Wyoming. At the inception of the corporation Drake took $10,000 of the corporate stock, Ballard $10,000, and the petitioner $5,000. The stock was issued and paid for at par in cash.

During the period from 1900 to 1917, at various intervals, the common capital stock of the corporation was increased, and at each time when stock was so increased Drake, Ballard, and the petitioner each subscribed and paid for, in cash at par, such a number of shares as maintained their original relative ownership of the total common stock of the company. The last increase of common stock was made in the year 1917, and thereafter Drake owned 800 shares, Ballard 800 shares, and the petitioner 400 shares.

During all the years from 1900 to 1920, the business of the corporation prospered and at commonly regular intervals paid substantial dividends.

The principal business of the Drake-Ballard Co. was that of loaning money on farms in the states above mentioned. As security for these loans the corporation took first mortgages and trust deeds, securing bonds which were sold to the corporation's customers. The greater portion of the corporation's profits arose through the taking, in the form of a second mortgage, of what is commonly known as a "commission mortgage," that is, if the mortgagor undertook to pay interest on the money borrowed at 8 per cent, the first mortgage was written as bearing interest at 6 per cent and the company's commission mortgage was written as bearing interest at 2 per cent. These first mortgages were then sold to the corporation's customers, or used as a basis for the issuance of bonds sold to such customers. The second, or commission mortgages, representing the profits of the corporation, were commonly retained by it and collections were made thereon at the regular interest-payment dates described in the first mortgages. In connection with its mortgage loan business, the company acquired some banking interests in different places, bought and sold bonds of other companies, and acted as agents in making loans for an eastern life insurance company.

The general depression in prices of products and the consequent collapse of farm land values in the grain and corn-growing States which occurred in the year 1920 was directly reflected in the business of the Drake-Ballard Co. Farmer mortgagors discontinued the payments of interest and failed to meet occurring installments of prin-

cipal, and the Drake-Ballard Co. was thus compelled to fail to meet its obligations to those of its customers who had furnished the funds for the farm loans.

In the year 1921, the Drake-Ballard Co.'s business and its books were examined by a committee of representatives from several Minnesota banks with whom it had been doing business and who were among its creditors. The bankers advised the company's officers that the situation was such that the company could no longer continue to carry on its business at a profit. Following the receipt of the advice from its bankers, the company's officers, in an effort to bolster up its fortunes, agreed to a voluntary 50 per cent assessment upon its common stock, and in carrying out this voluntary assessment the petitioner, not being able at that time to pay an assessment of $20,000, turned in an authorized cancellation of $20,000 par value of the common stock then held by him. Ballard, likewise, being unable to meet the entire assessment, paid in property valued at $15,000, and turned in and authorized the cancellation of $15,000 par value of the stock held by him. Drake conveyed to the company lands at a valuation of $15,000, and paid in cash and mortgages valued at $70,000. Common stock shares turned in by the petitioner and Ballard were reissued to Drake. The assets of the company were thus increased in the amount of $100,000, and its common stock liability remained as before. The company's financial troubles, however, continued and grew worse through the year 1922, and, in the spring of 1923, at a meeting of the company's stockholders, it was agreed that the company should and it then did go into voluntary liquidation.

Thereupon, a thorough investigation of the company's books of account and a reaudit of the same was made. Such reaudit, being made as of December 31, 1922, showed total assets $2,015,835.64. Of this total amount of assets, $685,856.60 represented the so-called second or commission mortgages and foreclosures of the same, against which there was set up a reserve for probable losses in an amount computed at about 14 per cent of the total. The company's liabilities, including preferred and common stock, were then found to aggregate $2,124,559.64, indicating a deficit of $108,724.00.

On December 31, 1923, after approximately eight months of liquidation, the company's assets were found to have been reduced by the amount of $991,986.08, while its outside liabilities, excluding capital stock and reserve, had been reduced in the amount of $810,416.95, indicating a shrinkage in its assets of $181,569.13, and at that date its total assets were carried as $1,023,849.56, and its total liabilities, including reserves and capital, were found to be $1,269,259.49, indicating a deficit of $245,409.93.

In the total of book assets as of December 31, 1923, there were yet carried a number of items which were then known to be worthless. Among these items were nineteen of the so-called second or commission mortgages of a face value of $52,579.89. The facts in reference to one of these commission mortgages are: Its face amount was $2,650; it was foreclosed on April 4, 1922, and bid in by the Drake-Ballard Co.; there was no redemption; it was subject to a first mortgage bond issue of $8,500; it covered a 200-acre tract of land in Montana which in 1923 was not worth more than $30 per acre. The title remained in that condition until 1925, when the Drake-Ballard Co., in consideration of $50, conveyed its foreclosure title to a bank which held $5,000 par value of bonds secured by the first mortgage, and at or about that time the same bank purchased the remaining $3,500 of bonds at 10 cents on the dollar. The facts pertaining to each of the other eighteen items are along substantially the same line as above set forth.

In the same list of assets there was stock of the Williams County State Bank in the amount of $6,150. This bank was closed in the year 1923 and it has never been reopened. In October, 1923, a 100 per cent assessment was levied against the stockholders. The Drake-Ballard Co. has paid part of this assessment.

Among said assets there was also carried stock of the Inverness State Bank in the amount of $27,115. This bank was closed in July, 1923, and has never been reopened. A 100 per cent assessment was made against its stockholders, and the Drake-Ballard Co. has paid part of this assessment. This bank had given a bond to Hill County, Montana, to secure deposits of public funds. The Drake-Ballard Co. was surety on this bond and has paid the $24,000 liability thereon.

Among the same assets there was carried stock of the Northern Loan & Credit Co. in the amount of $8,000. The Drake-Ballard Co. had been the owner of a majority of the stock of the Inverness State Bank, and prior to 1923 the State Banking Department had ordered this bank to charge off and remove from its list of assets various items of real estate and chattel mortgages. In order to satisfy the State Banking Department and keep the Inverness State Bank open for the time being, the Drake-Ballard Co. caused to be organized the Northern Loan & Credit Co., and paid $8,000 for stock in this company, and then made it a cash loan of $16,000. The Northern Loan & Credit Company then took over the rejected assets of the Inverness State Bank. These assets proved to be worthless and both the stock of the Northern Loan & Credit Co. and its note for $16,000, which was carried among the bills receivable of the Drake-Ballard Co. on December 31, 1923, were then known to be worthless.

The stated assets of the Drake-Ballard Co. on December 31, 1923, should therefore have been reduced by—

| | | |
|---|---:|---:|
| Worthless second mortgages | $52,579.89 | |
| Less: 14% previously set up in reserve | 7,360.18 | |
| | | $45,219.71 |
| Bank stocks: | | |
|     Williams County State Bank | 6,150.00 | |
|     Inverness State Bank | 27,115.00 | |
|     Northern Loan & Credit Co | 8,000.00 | |
| | | 41,265.00 |
| Bills receivable | | 16,000.00 |
|     Total | | 102,484.71 |

This amount, added to the indicated deficit of December 31, 1923, makes that actual deficit $347,894.64.

The $20,000 of common capital stock of the Drake-Ballard Co. owned by the petitioner on December 31, 1923, was on that date a total loss, and was a proper deduction from gross income. The common stock of the Drake-Ballard Co. acquired by the petitioner prior to March 1, 1913, was worth par on that date. The common stock of the Drake-Ballard Co. acquired by the petitioner after March 1, 1913, was acquired for cash at par.

> *There is no deficiency against this petitioner for the calendar year 1923. Judgment will be entered in due course.*